TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED FOR REVIEW.....................................1

STATEMENT OF THE CASE...........................................................................1

FACTUAL BACKGROUND.............................................................................3

STATEMENT OF JURISDICTION.....................................................................10

ARGUMENT.................................................................................................10

1.    The Proper Standard of Review is *De Novo*.......................................11

2.    Sanctions were improperly used to chill advocacy.............................13

3.    Bankruptcy Courts are not Courts of United States under Section
      1927.................................................................................................14

4.    District Court rational of precedence is unavailing............................15

5.    Bankruptcy Court sanctioning ran afoul of Appointment Clause.......16

6.    Bankruptcy Courts do not have inherent powers...............................20

7.    Appellant did not multiply the proceedings thus violating section
      1927.................................................................................................21

      a.    Appellant asserting counterclaims is not multiplication of
            Proceedings...........................................................................22

      b.    The counterclaims were not filed "unreasonably and
            vexatiously."..........................................................................23

      c.    The Appellant did not increase  the cost of Proceeding...........23

      d.    Appellant had a good faith basis to advance the cause of justice
            and protection of vulnerable families.....................................24

8.    Counterclaims were meritorious........................................................25

a.    The Counter-claims were properly asserted in the Answer and were viable. ...........................................................................25

b.    Both courts ignored that wide reading process........................27

c.    Special Damages need not be specified..................................29

e.    The Appellant properly pleaded liability under *Bivens*...........*32*

9.    The Pleadings were not futile, they comported with law...................36

10.   The district court should have granted a De novo hearing in this

matter..........................................................................................38.

11. The Legal fees awarded were very high and unbearable.......................41

12.   The District Court used an incorrect standard of review...................44

CONCLUSIO.................................................................................46

STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the Bankruptcy Courts are "courts of United States" for 28 U.S.C. § 1927 and "inherent powers"

3.    Whether the District Court erred in denying the right of the Appellant to be heard in a properly constituted court?

4.    Whether the Appellant's filed underlying pleadings counterclaiming against the panel trustee violated 28 U.S.C. § 1927?

5.    Whether the bankruptcy court sanctioned the Appellant in violation of Appointment Clause?

6.    Whether the Appellant was entitled to a de novo hearing before an article III court pursuant to *Crowell v. Benson*, 285 U.S. 22 (1932)?

7.    Whether the District Court committed a structural error in affirming the sanctions decision issued by the Bankruptcy Court without granting a hearing?

8.    Whether there can be an Abuse of Process and or Constitutional tort without special damages?

## STATEMENT OF THE CASE

In a Chapter 7 bankruptcy proceeding, pending in the United States Bankruptcy Court, Eastern District of New York, Adversary No. 11-1520-ESS, **A100,** the Appellant, Karamvir Dahiya, appearing for the defendant, Tozammel Miah), in the submitted Answer filed two counterclaims , against the panel trustee Debra Kramer (Appellee or Kramer)  based on abuse of process and constitutional tort [unwarranted invasion in the religious rights of the family]. **A109.** The defendant did not consent to the bankruptcy court jurisdiction, rather asserted the right to be heard by an article III court and

1

stated that the counterclaims are for adjudication by an article III judge. The defendant claimed that adversary proceeding against him was an attempt of the Appellee to extort settlement from the family and it violated their religious rights as a family. The Appellee moved for sanctions under 28 U.S.C. § 1927 and 11 U.S.C. § 105 claiming that that filing of answer with the counterclaim was multiplication of proceeding, unreasonably and vexatiously.**A361.** As soon as the motion for sanctions was filed, the defendant and the debtor afraid that they might lose their home engaged services of Ms. Christine Rubenstein. She immediately withdraw the counterclaims. **A494-496.** However in a short time thereafter, the debtor and the defendant rehired the Appellant as their counsel, as Ms. Rubinstein threatened the debtor's family that they would go to jail if they don't settle with the trustee. **A783.** In the sanctions motion, the Appellant pleaded to be heard by an article III court. **A636.** The Appellant objected to the jurisdiction of the Bankruptcy Judge on the underlying Adversary Complaint and as well as on the motion for sanctions, based on established precedents and the Appointments Clause. A motion to withdraw the reference was filed, however before the motion was decided, the Bankruptcy Judge decided on the sanctions motion. The Appellant did not participate in the evidentiary hearing scheduled by the bankruptcy judge and he also filed a letter motion for recusal of the Bankruptcy Judge.**A785.** The Bankruptcy Judge in her order dated March 11, 2013 sanctioned the Appellant a sum of $15,000 payable to the Appellee, **A23-55.** The Appellant appealed and pleaded that the District Court must provided him a chance for a de novo hearing under the standards established by the Supreme Court under *Crowell v. Benson*, 285 U.S. 22 (1932) or at least a chance to argue to his case before an article III judge as he had not participated in the evidentiary hearing. The

District Court affirmed the Bankruptcy Court, on March 27, 2014, 13-cv-3079. **A1.** Hence this appeal, requesting a chance to be heard on the motion for sanction.

## FACTUAL BACKGROUND

Shahara Khan, ("debtor" or "mother") an old ailing woman, wife of a cancer afflicted husband, Mohammed Mia, mother of Tozammel Miah ("defendant" or "Son"), Pamal Miah and Shumsun Rimi ( "daughter" or "Rimi") sought bankruptcy protection under Chapter 7 of Title II ("Bankruptcy Code") on July 22, 2010. Chapter 7 Case No. 10-46901. **A116.**

Debra Kramer ("Kramer" or "Appellee") the Appellee herein was appointed panel trustee in this case. During the first 11 U.S.C. § 341 meeting of creditors  and in her petition the Debtor declared that she does not own any house, present or past, no claims, no income (other than $1,290 of husband income); however, in her signed petition, she had declared that she had her name on the property deed, located at 87-27 110 Street, Richmond Hill, NY 11418 ("Old Home"), which was sold on April 5th, 2007. **A116, A154.** Debtor's petition reflected full disclosure. The debtor provided her joint tax returns which reflected that she had never taken home mortgage interest deductions. **A163.** All throughout, her Son Miah and daughter Rimi had taken all the mortgage interest deductions in their respective tax returns. **A203.**  Debtor's tax returns reflected an income of not more than $250 a week in her best working days**. A163 .** Debtor's attorney at that time, Eugene M. Banta ("Banta")  gave all material information about the house, debtor's income,  including her tax information.  Debtor was examined at the meeting with the help of a Bengali Translator. Attached is an unofficial transcript of what transpired at the meeting. **A154.** During the 341 meeting, while the

3

debtor was being examined by the Appellee Debtor's husband Mohammed Miah tried to explain the reason why his wife's name was on that house, but he was not allowed to speak. A review of the 341 meeting shows that the debtor was very confused, and that no detailed questions were asked or response elicited regarding the debtor's interest in or ownership of their previous house.  Appellee did not "orally examine the debtor to ensure that the debtor in this case of chapter 7 was aware of her debtor's ability to file a petition under a different chapter of this title," including reorganization under chapter 13 and  the potential consequences of seeking a discharge in bankruptcy as is mandatorily required under  II U.S.C. § 341. The Appellee did not call the debtor for another meeting to understand the ownership interest of the debtor in the previous house and did not conduct any Bankruptcy Rule 2004 examination, a tool of discovery routinely used by a conscientious trustee to ascertain facts before filing any plenary lawsuits against any party, or lest the trustee be blamed for a bad faith filing.

On December 3rd, 2011, Appellee commenced an adversary proceeding, in which she sued debtor's son Miah,  and claimed that Debtor had one third (1/3) interest in the "Old Home." **A100.**   Both mother and son were shocked about the lawsuit. However, they could not retain any attorney to defend their claims, since they had no monies. The debtor and her son appeared pro se in the bankruptcy court before Hon. Elizabeth Stong, pursuant to the summons served upon them.  It was at this date and hearing that both mother and son approached the Appellant to seek help. They asked the appellant if he could help them, since they been denied their rights as they were not allowed to explain and were improperly sued as this lawsuit was an intrusion on their religious rights.  The Appellant took the case upon the request of the family, since he was touched by their warmth and honesty

4

and concerned as to how a debtor was not given due process and the family had been sued without ascertaining the factual details. As a good will gesture, the family paid a sum of $250 for the case, since they could not afford more. The Appellant refused to take $250, and suggested that he would do it *pro bono* for the family. The mother debtor insisted that the Appellant accept that money as a token of affection for a son.

Immediately upon making a commitment to the debtor and her family, the Appellant interviewed the family members, looked at the details in the bankruptcy petition, studied the tax returns of the family and heard the testimony of the debtor at the 341 meeting of creditors. The Appellant also looked into the educational background of the family, their religious structure, earning capacity of each family member, past and present, and a number of people living in their present home located at 101-14, 102 Street, Ozone Park, New York ("New Home"). It is a religious family, with the following members living together as a "Joint Family": Mohamad Miah (Husband of debtor); Shahara Khan (debtor), Shamsun Rimi (debtor's daughter), (Abu Tahir  Rimi's husband), Rahid Tahir (Rimi's son), Tozammel Miah (son of debtor and defendant), Farhana Chowdhury (debtor's daughter in law, wife of defendant, Mansur Ahmed ( defendant's father in law), Afzal Nessa (defendants mother in law). All of these family members live as a religious unit, and the main pillar/support of the family is the defendant, Tozammel Miah.

The Appellant looked at all the available paperwork regarding mortgage payments of the "Old Home"(bought in 2002) and the "New Home" (bought in 2007). Down payment and all mortgage payments for

both the Old and New Home came from the defendant.[1] APP. It was found based on all the paperwork and enquiry that the debtor Ms. Shahara Khan had no more than a bare legal title interest in the Old Home. Defendant and the Joint family explained to the Appellant that debtor name was put in the house, since the mortgage broker insisted on having an elder's name on the mortgage and deed, in order to show responsibility [as the defendant was 19 years old and Rimi, 21]. Additionally, both son and daughter felt it their religious calling to have their mother's name on the deed as mark of respect, since it was their first home.

The Joint Family was very intimidated by this lawsuit, and the demand of the Appellee for money. They were fearful that they either would have to pay the trustee, or they would be homeless. The Joint Family members felt disrespected by the allegations, especially since the mother never had any interest in the Old Home, did not make a down payment, did not made any mortgage payments; even more, they paid her credit cards in 2004, and had been looking after her lodging, food, clothing and medical expenses. In light of this, how can the trustee insinuate that the mother had been deprived of her claims? Also, the defendant felt that it violated the religious rights and practices of the family that he would have to account for what he had done for his mother, when, pursuant to his religious belief, he feels he owes everything to his mother, and everything of the family belongs to her and vice versa. The Joint Family strongly felt the lawsuit was filed to extort monies and was an invasion of their religious rights.

The Appellant works very closely with the minority consumer bankruptcy filers in the Eastern District. The majority of the debtors cannot afford attorneys in case there are lawsuits filed against them in the

bankruptcy courts. The Appellant had studied the modus operandi of the Appellee and her counsel in other cases. The Appellee and her legal team file the lawsuit first, and then either withdraw it if it contested or otherwise, they will have some settlement. It was with this background that the answer was filed with the counterclaims, since the Appellee and her legal team take advantage of the unrepresented debtors family members. **A109.**

The Appellee sought sanctions against the Appellant under 28 U.S.C. § 1927 and 11 U.S.C. § 105. **A361.**

The Appellant objected to sanctions motions on merit and jurisdiction. **A504, 513**.

Unfortunately during this time, the Appellant had a death in the family and a personal loss owing to which, the Appellant asked for extension of time to be prepared for an evidentiary hearing.

Meanwhile the sanctions motion had its intended impact, a copy of which was sent to the debtors family by the Appellee. The family panicked and they were advised by their community members to hire a lawyer of Appellee's community so that the judge will be more inclined to listen them. The debtor's family approached Ms. Christina T. Castiglia-Rubenstein ("Rubenstein"). Ms. Rubenstein told the debtor's family that she knows the Appellee and her counsel Avrum Rosen and that she will have the case dismissed in a few days as she is an expert in such matters. The debtor's family members paid more than $4000 for her services. The defendant and the family discharged the Appellant on April 23rd, 2012. **A494**. However, Ms. Rubenstein instead of arguing for defendant, she immediately wrote a letter to the Clerk of the Bankruptcy Court withdrawing the counterclaims. **A495-96**.

There were talks between the Appellee's and Appellant's counsel and a tentative proposal was made to the bankruptcy judge which had terms that violated New York State bar ethics. **A591**. The proposal had onerous terms like the Appellant had to pay $15,000 to the Appellee's counsel and that the Appellant would not file any counterclaims in any lawsuit in the Eastern District without prior consent of the Bankruptcy Judge, Elizabeth Stong. When this proposal was stated in the bankruptcy court the Bankruptcy Judge laughed and said," " *(laughing) " So there will come a time where I may no longer -- if it's twenty to thirty years down the road it's a question of who retires first I suppose."* **A628, Line 17.**  It was unclear if such humiliating laugh was a routine judicial commentary or reflected a bias against the Appellant.

The Appellant objected to the proposed settlement as it stymied the rights of the prospective clients and that such moratorium violated basic bar ethics. The Appellant said it on the record: *"I disagree it's a lifelong -- people, minorities are suffering."* **A628, Line 20**. The Appellant insisted on being heard: *"As an officer of the Court I should be given a chance to voice my concern."* **A629, Line 6.** The Bankruptcy Judge snubbed the Appellant: *" Mr. Dahiya, you're a client. You're a client*." **A629, Line 8.** As a result of which there was no agreement from the Appellant said. The District Court incorrectly stated that the Appellant reneged from the contract. **A3.**

On November 19, 2012, the Appellant filed a motion to withdraw the reference regarding the sanctions issue. **A636.**

An evidentiary hearing was held on November 30, 2012. The court heard the arguments advanced by Appellee counsel and the Appellant did not participate as he had invoked the right to be heard by an article III court and also because the bankruptcy judge was biased. **A713.**

8

Meanwhile, the Appellee counsel kept taking adjournment on the underlying fraudulent conveyance stating to the court that he and Ms. Rubenstein are "this close" to a settlement. **A65.** However, the reality was something very different. Ms. Rubenstein kept misleading the defendant and his family that she has been to the court several times and that if the defendant and debtor do not settle with the trustee, they will be criminally prosecuted. Unfortunately, Ms. Rubenstein was making incorrect statements to the defendant and the debtor as she did not appear on any pre-trial conference which was adjourned several times. As was expected the debtor and her son rushed to the Appellant, asking him to represent them as Ms. Rubenstein had warned them to settle with the trustee or go to jail. On December 5, 2014, the Appellant filed once again Notice of Appearance. **A782.** Also, a letter was sent to Ms. Rubenstein to stop threatening criminal prosecution of the defendant and his family. **A782.**

On March 3rd, 2011, prior to the issuance of the decision of the Bankruptcy Judge, the Appellant filed a letter motion for her recusal because of her continued bias in this case and others. **A785-788.**

As soon as the letter motion for recusal was filed, Bankruptcy Judge sanctioned the undersigned under section 1927 of the Title 28 and under "inherent powers" of the Court. **A23.**

An Appeal of this decision and order was filed on March 20, 2013. A834. Soon thereafter the Appellant requested the District Court to take judicial notice of statement made by the Appellee's counsel in a filing in the bankruptcy court opposing the motion for reopening of discovery. **A789.** The Appellee counsel Avrum Rosen in his filed statement stated that the, Trustee, the Appellee, the fiduciary of the underlying estate, "has no personal knowledge of any of the matters of this case."**A811.** Also, the

Appellee filed their brief opposing the appeal primarily asserting that the bankruptcy court had inherent power to sanction,**A863,** to which the Appellant filed his reply. **A877.**

**STATEMENT OF JURISDICTION**

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. Final Judgment sanctioning the appellant under 28 U.S.C. § 1927 and "inherent powers" with a penalty of $15,000 was entered by in the bankruptcy court on March 11, 2013 which was subsequently affirmed by the District Court on March 27, 2014. *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 717–718 (8th Cir. 1999) (appealable if amount of money fixed); *Pannonia Farms, Inc., v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005) ("the district court did not fix the amount of sanctions to be awarded. As such, the order is not final within the meaning of 28 U.S.C. § 1291 … .").

Alternatively, if the court does not construe the underlying decision as a final judgment, the Court is requested to entertain the appeal under the collateral order exception. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). Review is permitted under this exception as Courts below "(1) conclusively determined the disputed question if the Appellant conduct was sanctionable owing to the filing of the Counterclaims, (2) narrowly interpreted scope of New York state claim of "Abuse of Process" and constitutional tort, (3) this ruling by the bankruptcy judges is not reviewable on appeal from a final judgment.

**ARGUMENT**

The district court upheld the sanctions awarded by the bankruptcy judge on the grounds:

1) Bankruptcy Courts have power to sanctions under its "inherent powers" as a court and under 28 U.S.C. § 1927;

2) "Appellant's allegation that the Trustee failed to investigate before initiating the adversary proceeding did not properly plead a cause of action for the abuse of process;"

3) Appellant failed to "allege actual or special damages with sufficient particularity in the pleadings;"

4) Appellant "could not have had a reasonable belief that his abuse of process claim had factual support;"

5) Agreeing with the "Bankruptcy Court's finding that the constitutional torts counterclaim was not colorable;" and

6) Appellant caused "significant and unnecessary delay in [the]adversary proceeding and in the administration of the Debtor's bankruptcy case, and [] increased the cost of these proceedings."

A reading of the decision of Bankruptcy Judge and its affirmance by the district court does not tell as to what really was a bad faith, impermissible conduct here. Both Courts below finds the counterclaims as defective pleaded, but defective pleadings can never be a basis for sanctions. "The district court must identify the conduct that is sanctionable under section 1927 with specificity if the sanctions are to have any effect on the conduct of the sanctioned parties in the future and if we are to conduct a meaningful review of the appropriateness of those sanctions." *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 717–718 (8th Cir. 1999).

1.    **The Proper Standard of Review is *De Novo***

The Courts generally use abuse of discretion for reviewing a sanction decision. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990). However, here the proper standard is *De Novo*. The underlying decision of the bankruptcy and district courts was not more than the analytical process of interpreting the legal effect of the counterclaims in the original Answer, thus is more akin to the process of interpreting legal sources such as rules, statutes, regulation or constitutional provisions. See *Vulcan Painters, Inc. v. MCI Constructors, Inc.,* 41 F.3d 1457, 1460 (11th Cir. 1995)(holding that review is *de novo* in determining whether a document is ambiguous for purposes of the parol evidence rule); *Talley v. United States*, 990 F.2d 695, 698-99 (1st Cir. 1993) (stating that construction of documents is reviewed de novo). Standard of review here is *de-novo*. Appellate courts review preserved challenges to conclusions of law *de-novo* affording no deference to the trial decision. See, e.g., *First Options of Chi., Inc. v. Kaplan,* 614 U.S. 938, 947-48 (1995). Also de-novo standard is requisitioned here, as the way the district court made its own finding on the default judgment/sanctions order[2] of the bankruptcy court, without according an opportunity to be heard, as pleaded, it committed a structural error. How can there be a bad faith finding without having a hearing? Also this finding of bad faith was incredulously found on the basis of an asserted compulsory counter-claim and invocation of *Bivens* to protect family members of minority class. As so cogently put by Supreme Court in *Bose Corp. v. Consumers Union of U.S., Inc.*:

---

[2] The appellant had filed a motion to withdraw the reference and invoked the right to be heard by an article III court. Also, only an article III court could have decided on the constitutional issues related with Bivens claim against the panel trustee and New York State abuse of process law and if it is a compulsory counterclaims.

A finding of fact in some cases is inseparable from the principles through which it was deduced. At some point, the reasoning by which a fact is "found" crosses the line between application of those ordinary principles of logic and common experience which are ordinarily entrusted to the finder of fact into the realm of a legal rule upon which the reviewing court must exercise its own independent judgment. Where the line is drawn varies according to the nature of the substantive law at issue. Regarding certain largely factual questions in some areas of the law, the stakes - in terms of impact on future cases and future conduct - are too great to entrust them finally to the judgment of the trier of fact.

466 U.S. 485, 501, n 17.  (1984) (emphasis added)

This matter also warrants *de novo* review as the appellant was denied a hearing before an article III judge and a properly constituted court. *Glidden Co. v. Zdanok*, 370 U.S. 530 (1962).  Appellant was also denied a *de novo* hearing as envisioned under *Crowell v. Benson*, 285 U. S. 22 (1932) (mandating de novo *de novo* hearing of jurisdictional/constitutional facts legal findings). See also, *Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172, 175–176 (3d Cir. 1999) ("We normally review the District Court's award of costs and sanctions for abuse of discretion, but if the procedure the court employs in imposing sanctions raises due process concerns, our review is plenary"). "A district court's order in a bankruptcy case is subject to plenary review, meaning that this Court undertakes an independent examination of the factual findings and legal conclusions of the bankruptcy court." *In re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000).

## 2.    Sanctions were improperly used to chill advocacy.

The sanctions powers are not for suppressing advocacy or chilling hard questions. It is just not "to chill an attorney's enthusiasm or creativity in pursuing … legal theories." Adv. Com. Note (1983) to Fed. R. Civ. P. 11. Even if there is no clear, binding precedent on the issue and the position

13

asserted is "fairly debatable," *Laborers Local No. 938 v. B.R. Starnes Co.*, 827 F.2d 1454, 1458 (11th Cir. 1987); *Knight v. H.E. Yerkes & Assoc.*, 675 F. Supp. 139, 146 n.5 (S.D.N.Y. 1987). Here both courts found that the pleadings were defective, as necessary elements of cause of action were missing. **A1 & 23**. However that alone cannot become a basis for sanctions. *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) ("Although a legal claim may be so inartfully pled that it cannot survive a motion to dismiss, such a flaw will not in itself support Rule 11 sanctions— only the lack of any legal or factual basis is sanctionable. ... And we have recognized that 'creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment.' ... Although [plaintiff's counsel] failed to provide the court with a thorough exposition on the circuit split and the Supreme Court's decision in Wright, their lack of thoroughness does not render her position frivolous").

### 3.    Bankruptcy Courts are not Courts of United States under Section 1927.

Section 451 defines "court of the United States" as "the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." 28 U.S.C. § 451. Bankruptcy Court is not in this definition. *In re Courtesy Inns*, 40 F.3d 1084, 1086 (10th Cir. 1994)(not finding section 1927 authority for not being "courts of United States" under 28 U.S.C. §451), accord *Brown v. Mitchell* (*In re Arkansas Communities, Inc.*), 827 F.2d 1219, 1221 (8th Cir. 1987) ("questionable whether a bankruptcy court falls within the definition of 'courts of the United States' for purposes of imposing sanctions against attorneys under this section"). If

section 1927 itself limits its use to defined courts, Courts cannot expand its reach. *Bank of N.S. v. United States*, 487 U.S. 2 50, 255 (1988) ("It follows that [Federal] Rule [of Criminal Procedure] 52 is, in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions."). If something is not permissible owing to the language of the statute the courts cannot use its inherent powers to inflict statutorily provided penalty. Here bankruptcy court using inherent power to invoke 1927 penalty provisions clearly is a proscribed venture. See *Degen v. United States*, 517 U.S. 820, 823–24 (1996) ("In many instances the inherent powers of the courts may be controlled or overridden by statute or rule."

## 4.    District Court rational of precedence is unavailing.

The district court summarily dismissed the jurisdictional objection of Appellant:

> [T]he Second Circuit has found, **albeit without discussion**, that a bankruptcy court is a "court of the United States" and may issue sanctions under Section 1927. *Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 230 (2d Cir. 1991) (finding that "[a] bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that an attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay"). **A.7.**

Jurisdictional challenges cannot be responded by citing of appellate courts' dicta observations. Unreasoned decisions are not precedential per se, as the Court's construction of the Constitution or laws, ultimately 'depend[s] . . . on the force of the reasoning by which it is supported." Passenger Cases, 48 U.S. (7How.), 283, 470 (1849); see also *Patterson v. McLean Credit Union*, 491 U.S. 164, 172 (1989) ("'state decisis is a principle of policy and

not a mechanical formula for adherence to the latest decision "0 (quoting *Boys Markets, Inc. v. Retail Clerks*, 398 U.S. 235, 241 (1970). *Matter of Cohoes* is irrelevant as a doctrinal matter because cases in which jurisdiction goes unchallenged and is assumed *sub-silentio* are not binding authority for the proposition that jurisdiction is proper. See, e.g., *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 97 (1994); *United States v. L.A. Tucker Tuck Lines, Inc.*, 344 U.S. 33, 38 (1952)("[T]his Court has followed the lead of Mr. Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub-silentio*." (citation omitted); see *Navy Chaplaincy*, 534 F.3d at 764; See *Ariz. Christian Sch. Tuition Org. v. Winn*, No. 09-987, Slip op. at 17-18 (U.S. Apr. 4, 2011)(justification for applying rule against *sub silentio* jurisdictional holdings).

In federal judiciary, there is a presumption against jurisdiction and not in favor.

**5.      Bankruptcy Court sanctioning ran afoul of Appointment Clause.**

The bankruptcy judge could not have sanctioned without running afoul of Appointment Clause strictures. A bankruptcy judge, taking into the consideration the immense federal powers exercised on a continuing basis and not personal, "transient," or "incidental," makes him or her an "Officer of the Untied States," and then must  satisfies the standard laid out by the Supreme Court:

> We think that the term "Officers of the United States" as used in Art. II, defined to include "all persons who can be said to hold an office under the government," is a term intended to have substantive meaning. We think its fair import is that any appointee exercising  significant authority pursuant to the laws of the United States is an "Officer of the United States," and

must, therefore, be appointed in the manner prescribed by § 2, cl. 2, of that Article.

*Buckley,* 424 U.S. at 125

Here the Bankruptcy Court wielded total judicial powers. Before a federal officer acts as an principal officer, wielding considerable powers, on its own, then those powers must or should be vested with the officer pursuant to a legitimate authority. Here the bankruptcy Judge decides issues of State laws, constitutional torts and sanctions under title 28 and pursuant to a self-declared "inherent powers." This power exercising officer cannot be an inferior judicial officer and thus its appointment must be pursuant to the Appointment Clause by the President and confirmed by the Senate. The powers of the bankruptcy judge as delineated in Title 11 and Title 28 binds third parties for the benefit of the public, as administering, executing, or authoritatively interpreting the laws. For instance, under 28 U.S.C. § 151, in each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as **a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court,** except as otherwise provided by law or by rule or order of the district court.

Thus a bankruptcy court/judge is a federal office involving a position to which is delegated by legal authority a portion of the sovereign powers of the federal Government. Such authority primarily involves the authority to administer, execute, or interpret the law. *See also Printz v. United States,* 521 U.S. 898, 922-23 (1997)(Constitution provides that President and the officers he appoints are the ones who are "to administer the laws enacted by

Congress" and "execute its laws"); *Bowsher v. Synar,* 478 U.S. 714, 733 (1986) ("Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law.").

"We think that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred. Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments." *Ryder v. United States,* 515 U.S. 177 (1995). Such concerns were raised, however neither the bankruptcy court or the district court addressed this situation.

A bankruptcy judge is not a "Principal Officer" as contemplated under Article II of the Constitution, as her appointment is not by the President of the United States with the advice and consent of the Senate. As a result a bankruptcy judge is an "Inferior Officer." However, assumed jurisdiction by the bankruptcy judge on the underlying Adversary Complaint to decide cases of state common law causes of action would catapult the functioning and power of such judicial officer from an inferior to a principal officer. But a principal officer must be appointed by the President with the Senate consent. Based on the case law and guidance provided, a bankruptcy judge might not be an inferior officer based on the four factors laid out by the Supreme Court: (1) the officer's removability by a superior executive branch official; (2) the scope of the officer's duties; (3) the scope of the officer's jurisdiction; and ( 4) the tenure of the office at issue. *Morrison v. Olson,* 487 U.S. 654, 665-68 (1988). Besides when a non-article III judge declares that she or he has the power to issue article III commands and sanctions parties accordingly, something is really amiss.

*First*, the bankruptcy judge is not removable at will but only for a cause. 28 U.S.C. § 152. *Second*, the bankruptcy judge, instead of being provided with "only certain, limited duties," has a huge panoply of powers and duties. See 28 U.S.C.§ § 157 and 1334. *Third*, the tenure of bankruptcy judge is minimum for 14 years and is not ad hoc or temporary in nature. 28 U.S.C. § 152. *Fourth*, the bankruptcy judge has ongoing responsibilities. Thus the bankruptcy judge wields complete powers of an independent judges as found under 28 U.S.C. § 1334 after the matter has been referred under section 157 of title 28-such referral is pre-established there is no discretionary or individuated consideration given before such reference. The tenure of the bankruptcy judge is not on an ad-hoc basis but spans over a period of 14 years with re-appointment which is rarely denied. According to *Morrison* test, the bankruptcy judges cannot be equated to "Inferior Officer." Further, applying the subsequent test as proposed by Justice Scalia in *Edmond* rejecting *Morrison:* "Morrison did not purport to set forth a definitive test for whether an office is 'inferior' under the Appointments Clause,"--"inferior officers" are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate,"--the bankruptcy judge role transgress judicial limits of an inferior officer. *Edmond v. United States,* 520 U.S. 651, 663 (1997). Applying *Edmond* test i.e. equating the bankruptcy judge as an adjunct, akin to magistrate to Article III has been dismissed. *See Stern v. Marshall,* 131 S. Ct. 2594.

The requirements of the Appointments Clause are "among the significant structural safeguards of the constitutional scheme" and are "designed to preserve political accountability relative to important government assignments." *Edmond,* 520 U.S. at 659, 663. Thus, the Appellant is being

19

improperly forced to have his issue decided by an unconstitutionally improper forum despite the fact that Appellant has an independent *right* to adjudication in a constitutionally *proper* forum, *Glidden,* 370 U.S. at 533,671. The Appellant moved for withdrawal of reference, it was denied. Appellant even in the appeal from the bankruptcy court requested a de novo hearing, it was denied.  In essence the Appellant did not have a proper hearing before a proper court.

**6.    Bankruptcy Courts do not have inherent powers**

Neither the  Bankruptcy Court nor the District court explained the source of the "inherent power" for the bankruptcy unit.  Section 151 of Title 28 states that " the **bankruptcy judges in regular active service shall constitute a unit of the district court** to be known as the bankruptcy court for that district."

The word "court" is referred to the pool (aggregation) of auxiliary judicial officer assisting the district court in its judicial function. Courts come into being, established or are independent of their presiding officer. "Inherent powers" inhere with a court and not a particularized individual.

*First*, inherent power is a mark of an independent court; *second,* it does not inhere to auxiliary judicial officer assisting the Court [here district court]; *third*, it has to be a court of record; *fourth*, in a federal judiciary it has to be with an article III court.

Agencies and or fact finders, appointed commissioners etc. are not independent and least of all a court.  Thus  Courts, only as an independent and coequal branch of government, once they are created and their jurisdiction established, have the authority to do what courts have traditionally done in order to accomplish their assigned tasks. See *Anderson v. Dunn*, 6 Wheat. (19 U.S.) 204, 227 (1821); *Ex parte Robinson*, 19 Wall. (86 U.S.) 505, 510 (1874); *Link v. Wabash R. Co.*, 370 U.S. 626, 630– 631

(1962); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); and id., 58 (Justice Scalia dissenting), 60, 62–67 (Justice Kennedy dissenting).  Inherent powers under the federal judiciary flows from article III itself.

Since bankruptcy judges do not preside over an independent court, they do not have inherent power to sanction. See *Miner v. Atlas*, 363 U.S. 641 (1960), holding that a federal district court, sitting in admiralty, has no inherent power, independent of any statute or the Supreme Court's Admiralty Rules, to order the taking of deposition for the purpose of discovery.

District Court reliance on *In re Plumeri*, 434 B.R. 315, 327-28 (S.D.N.Y. 2010) (quoting *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009)), *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)) and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) is inapposite as cases *Estate of Warhol* and *Chambers* dealt with the article III court's inherent power and not the bankruptcy court.  *In re Evergreen Sec., Ltd.*, did not deal with the issue if inherent powers can be delegated when judicial business is delegated to assisting unit or an auxiliary judicial officer. Inherent powers inheres with the court and are not delegable as they flow from article III itself in federal adjudication context.  Similarly *In re Plumeri* treats bankruptcy courts as article III courts without questioning or examining the unique aspect of "inherent powers."

7.    **Appellant did not multiply the proceedings thus violating section 1927.**

Appellee failed to satisfy any of the elements and the courts committed an error of law in granting and affirming the sanction under section 1927.  This section is used only in instances of "a serious and studied

disregard for the orderly processes of justice." *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163, 1167 (7th Cir. 1968). Also , there must be finding of bad faith. In *Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir. 1986), which there is none here.

### a.    Appellant asserting counterclaims is not multiplication of Proceedings.

Courts below totally ignored that section 1927 is penal in nature and is strictly construed. *NASCO, Inc. v. Calcasieu T.V. & Radio, Inc.,* 124 F.R.D. 120, 138–139 (W.D. La. 1989), aff'd, 894 F.2d 696 (5th Cir. 1990), aff'd, 501 U.S. 32 (1991). While a litigant might have a right under section 1927 for compensation, it is penal in nature. *Action Mfg., Inc. v. Fair Haven Textile Corp.,* 790 F.2d 164, 167 (1st Cir. 1986). If it is penal and is given strict construction, then filing of the counterclaim is not a multiplication of proceeding as it is akin to commencement of a proceeding. Until there is a case, there is arguably nothing to multiply. *Sussman v. Bank of Israel,* 154 F.R.D. 68, 71 n.2 (S.D.N.Y. 1994) (citing Treatise), rev'd on other grounds, 56 F.3d 450 (2d Cir. 1995). See also *Steinert v. Winn Group, Inc.,* 440 F.3d 1214, 1224–1225 (10th Cir. 2006) ("§ 1927 covers only the multiplication of 'the proceedings in any case'.... This unambiguous statutory language necessarily excludes the complaint that gives birth to the proceedings, as it is not possible to multiply proceedings until after those proceedings have begun"). See also *DeBauche v. Trani,* 191 F.3d 499, 511-512 (4th cir. 1999)("We conclude as a matter of law that the filing of a single complaint cannot be held to have multiplied the proceeding s unreasonably and vexatiously nad therefore that § 1927 cannot be employed to impose sanctions")

**b.    The counterclaims were not filed "unreasonably and vexatiously."**

This provision demands that the counterclaim should have been unreasonable and vexatious", both elements must be satisfied at the same time. Counterclaims are compulsory claims under Federal Rules. They had to be asserted in the same case, as they arise from the same operating facts. . *Abuse of process is* a compulsory counterclaim. *United Artists Corp. v. Masterpiece Prods.,* 221 F.2d 213, 216 (2d Cir. 1955). A counterclaim is compulsory under F.R. 13(a) 'if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. See, *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 633-34 (3d Cir. 1961)(finding that a party's counterclaim was a compulsory counterclaim within the meaning of rule 13(a), because allegations that claims were unjustified, and brought in bad faith without color of right and with the sole object of harassing, entailed determination of many of the same facts and law relating to the underlying claim).

Since counterclaims are compulsory, it could not have been unreasonably claimed. If it is reasonable then it cannot be vexatious. *F.D.I.C. v. Conner*, 20 F.3d 1376, 1384–1385 (5th Cir. 1994) (§ 1927 sanctions vacated because district court's order found only carelessness and negligence but no finding of vexatiousness).

**c.    The Appellant did not increase the cost of Proceeding.**

Counterclaims were withdrawn out of fear by the defendant through their previous counsel. There was no increase in the cost of proceeding. See

*Zuk v. Eastern Pa. Psychiatric Inst.*, 103 F.3d 294, 297 (3d Cir. 1996) (reversing § 1927 sanctions imposed "not because of any multiplicity of the proceedings or delaying tactics, but for failure to make a reasonably adequate inquiry into the facts and law before filing the lawsuit").

**d.    Appellant had a good faith basis to advance the cause of justice and protection of vulnerable families.**

The Counter claims evinced a very good faith effort to protect the debtors' families from being virtually blackmailed through an official use of a legal process.  The Bankruptcy Judges do not get to see the what goes in outside when the debtors' families are sued and they have no lawyer to represent them. Also, how the lawsuits are filed with a claim running in thousands and but settled in hundreds. Not because the panel trustees have compassion for these immigrant minorities but because the claims do not have legs to stand on most of the time.   As one court has permitted the jury to conclude that a lawyer's unfounded  and uninvestigated medical malpractice claim, followed by a low-figure demand for settlement and a trial in which no expert testimony was produced, reflected an attempt to extort a nuisance settlement for which the lawyer would be liable for abuse of process. *Bull v. McCuskey,* 1980, 96 Nev. 706, 615 P. 2d 957.   Abuse of process here is not the power of the trustee to bring a proceeding, but the reason for which it is brought and for the collateral advantage of earning fees for which it is not meant to be.  Both the district court and bankruptcy judge read tort of abuse very narrowly. Rather the test is:  "Quite simply, a court should ask whether there has been a "perversion" of the process, or, **whether a legal process has been used "as a tactical weapon to coerce a desired result that is not the legitimate object of the process."** Gen. *Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 307 (3d Cir.

2003). And New York approach to "Abuse of Process" is far generous than this. *Parkin v. Cornell Univ., Inc.*, 78 N.Y.2d 523, 530, 583 N.E.2d 939 (1991) ("**nothing in this Court's holdings would seem to preclude an abuse of process claim based on the issuance of the process itself**")

## 8.    Counterclaims were meritorious.

### a.    The Counter-claims were properly asserted in the Answer and were viable.

Both the courts, bankruptcy and district failed to see that the abuse of process is a compulsory and must be pleaded in the response.    It is true, *under New York law, all counterclaims are permissive, N.Y.CPLR § 3019 however such is not the case with the federal pleadings. FRCP 13.    Abuse of process is* a compulsory counterclaim. *United Artists Corp. v. Masterpiece Prods.*, 221 F.2d 213, 216 (2d Cir. 1955). A counterclaim is compulsory under F.R. 13(a) 'if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. *Pochiro v. Prudential Insurance Co. of America* 827 F.2d at 1252. *Hampton v. Nustar Mgmt. Fin. Group*, No. 2:05-CV-0824-BES-GWF, 2007 WL 119146, at *2 (D. Nev. Jan. 10, 1997)(citing *Pichoro v. Prudential Insurance Co. of America, Inc.* in finding that an abuse-of-process claim is a compulsory counterclaim, because, although the merits of the substantive claim are not controlling on the question of abuse of process, they are necessarily significant in the assessment of a possible ulterior motive, and thus the similarity of the facts necessary for the determination of both actions reveals that Hampton's substantive claims and Handy Cash's abuse-of-process claim stem from the same basic controversy between the parties).

Thus compulsory counterclaim if not claimed in the same pleadings, it is lost. *Valley Disposal Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*, 113 F.3d 357, 364 (2d Cir. 1997).

District and bankruptcy courts did not consider the fact that in bankruptcy proceedings it is the federal rules of civil procedure that governs even if rights dealt with are state-created. Rule 13 makes "abuse of process" a compulsory counterclaim. *Hanna v. Plumer,* 380 U.S. 460 (1965)("To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act."). Even the Appellee and her counsel has this misperception that abuse of process has wait for the termination of the case. **A376**. They cited the decision of Hon. Alan Trust, A386 to show that the abuse of process claim must wait. However Judge trust, respectfully misconstrued "abuse of process" and somehow for reasons unknown equated it with another tort, "malicious prosecution" which must wait for conclusion.

Here the Appellee's counsel in order to extort money commenced the lawsuit against a helpless family. The underlying adversary complaint was unjustifiable and untenable in all aspects. This absence of "justification or excuse" is an element of a cause of action for abuse of process, *Board of Education of Farmingdale Union Free School Board of Ed. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*, 38 NY2d 397, 380 NYS2d 635, 343 NE2d 278; Liss v Forte, 96 AD3d 1592, 947 NYS2d 270. It is a perversion of the process when it is used to extort money, *Foy v Barry*, 87 AD 291, 84 NYS 335, to coerce the withdrawal of a civil action, id., or criminal action, see

26

*Goldstein v Siegel*, 19 AD2d 489, 244 NYS2d 378, or compel the payment of a debt, *Dishaw v Wadleigh,* 15 AD 205, 44 NYS 207. The abuse of process may be established where a collateral advantage like extortion, blackmail, or retribution is sought. For that matter even the issuance of a subpoena has been found to be abuse of process. *Ginsberg v. Ginsberg*, 84 A.D.2d 573, 443 N.Y.S.2d 439 (2d Dep't 1981). In a bankruptcy context, the process had already begun with the commencement of the bankruptcy proceeding, thus the filing of an adversary proceeding can be seen as a overt act to extort from the debtor's family.

### b.   Both courts ignored that wide reading process.

The Court stated: "[t]he filing  and service of summons and complaint, without more, 'is not a sufficient basis for meeting the first element'" of an abuse of process claim," *In re Khan*, 488 B.R. at 532-33 (quoting *O'Bradovich v. vill. of Tuckahoe*, 325 F. Supp. 2d 413, 434 (S.D.N.Y. 2004). However "the Process" in the bankruptcy context, had already issued in the bankruptcy matter with the filing of the petition, 11 U.S.C . § 301 and mandatory appearance of the debtor at the meeting of creditors, 11 U.S.C. § § 341 & 342 wherein a trustee like the Appellee presides.  The power of the trustee over the estate and the debtor's cause of action has already begun to the extent the trustee can ask for arrest of the debtors which this Appellee and her counsel has asked this very bankruptcy judge for such arrest so that the debtors could be examined. Process refers to procedure. E.g, "Process" is the means through which a court compels appearance of a party. *Crown Laundry v. Roberton*, 205 Ga. 214, 53 S.E.2 116 (1949); *McKenna v. Cooper*, 79 Kan. 847, 101 P. 662 (1904). "Process" is any means of acquiring jurisdiction. *Ogdon v. Gianakos*, 415 Ill. 591, 114

N.E.D 2d 686 (1953). No doubt Process is given the broadest meaning or reading—it embraces all of the proceedings connected with the litigation of a cause of action. See *Cutler v. Cutler*, 28 Misc. 2d 526, 217 N.Y.S. 2d 185, 188 (Supp. Ct. 1961) ("The term "legal process" in its broadest sense is equivalent to procedure and embraces any form of order, writ, summons or notice given by authority of law for the purpose of acquiring jurisdiction of a person or bringing him into court to answer.")

Even New York State Court of Appeals correctly admitted, "that It is not clear, however, whether this language ["[t]he gist of the action for abuse of process lies in the improper use of process after it is issued"]should be viewed as a strict and limiting definition of the tort or whether it is merely illustrative." *Parkin v. Cornell Univ., Inc.,* 78 N.Y.2d 523, 530, 583 N.E.2d 939 (1991). The Court's further observation is very instructive, it goes to state, **"nothing in this Court's holdings would seem to preclude an abuse of process claim based on the issuance of the process itself."** Id. It is the law of the New York state binding on the federal courts for New York causes of action. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); see also *Bernhardt v. Polygraphic Co.*, 350 U.S. 198 (1956). Thus filing of an adversary complaint in a bankruptcy setting can constitute or provide the first element, "the Process." A panel trustee presiding over a 341 meeting is already a process in operation. The trustee knew that where the debtor is a bare legal title holder and that estate will not have any claim on the property. Thus, process employed to extort is actionable. *Granger v. Hill,* 4 Bing. (N.C.) 212, 132 Eng. Rep. 769 (1838). Also, even a malicious prosecution as a counter-claim has been allowed in New York state adjudication context. *Herendeen v. Ley Realty Co.,* 75 N.Y.S.2d 836, 838 (Sup. Ct. 1947) ("But

where a counterclaim is interposed, the entire subjects of whether or not there has been malicious prosecution and what damage, if any, resulted there from, may all be tried out and determined efficiently and effectively with a minimum of effort and expense; or, if the circumstances warrant, separate trials and different modes of trial of different issues may be ordered.").

### c.    Special Damages need not be specified.

District Court finds that "New York law requires that a plaintiff alleging abuse of process plead actual or special damages," citing *Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*, 38 N.Y.2d 397, 405 (1975), however she misses what Farmingdale court embraces: ***"As to the second cause of action for punitive damages we see no obstacle to its maintenance, contingent on the establishment of malice."*** *Id.* Thus, "[w]here process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or retribution, the tort of abuse of process will be available to the injured party." *Farmingdale.* Here the district court failed to see that the viable complaint for abuse of process is made even under the New York state standards. As so clearly stated by state court in *Farmingdale, "[h]*ere we consider solely whether the complaint states a valid cause of action. If the proof at trial establishes that defendants attempted to reach a reasonable accommodation at a time when the accommodation would have been effectual, the cause of action will be defeated,"--complaint was more than clear in substance and in pleading."

Abuse of process damages are not all tangible or monetary damages, moreover the amount does not need to be mentioned in the pleadings. *Great*

*Am. Indem. Co. v. Brown,* C.A.5th, 1962, 307 F.2d 306 (actual amount not required); Charles E. Beard, Inc. v. *Cameronics Technology Corp.,* D.C.Tex.1988, 120 F.R.D. 40 (actual amount of attorney's fees not required). The requirement in Rule 9(g) that claimed special damages must be specified in the complaint does not mean that the amount of those special damages must be pleaded. *United Ins. Co. v. B.W. Rudy, Inc.,* D.C.Pa.1967, 42 F.R.D. 398, 405. A reasonable attorney fees and other expenses incurred in defending the wrongful criminal or civil litigation or quashing abusive process, is a damage in itself that does not need to be pleaded. See *Tri-State Hospital Supply Corp. v. United States,* 341 F.3d 571 (D.C. Cir. 2003).

 Also law of torts is not a calcified structure, as noted commentator has stated that

> The law of torts is anything but static, and the limits of its development are never set. When it becomes clear that the plaintiff's interests are entitled to legal protection against the conduct of the  defendant, the mere fact that the claim is novel will not of itself  operate as a bar to the remedy.

W. PROSSER, LAW OF TORTS § 1 (4th ed. 1971) (citing *Kujek v. Goldman,* 150 N.Y. 176, 44 N.E. 773 (1896)).

It is hard to understand as to how a finding of "*Appellant's allegation that the Trustee failed to investigate before initiating the adversary proceeding did not properly plead a cause of action for abuse of process,*" and failure to "*allege actual or special damages with sufficient particularity in the pleadings*" will sustain sanctions under section 1927 and "inherent powers." The reasoning applied here is flawed and far undermining of the claims invoked in the counterclaims, thus chilling advocacy and rendering poor bankruptcy debtors and their families more vulnerable to systematic exploitation by the panel trustees.  This decision undermined and

discouraged—*"[w]e do not intend to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law. Vital changes have been wrought by those members of the bar who have dared to challenge the received wisdom, and a rule that penalized such innovation and industry would run counter to our notions of the common law itself."* Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985)). Accord *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986).

Here the bankruptcy and district courts failed both to appreciate that the inadequate pleadings cannot be a basis of sanction and secondly, a pleader is not required on the face of complaint to allege every legal element or fact that must be proven to support particular claim. *Kingman Park* 348 F.3d at 1040; see also *Bennett Schmidt* 153 F.3d, 516, 518, (7th Cir.1998). In fact it is generally accepted that complaint sufficiently raises claim even if it points to no legal theory or even if it points to the wrong legal theory as basis for that claim as long as relief is possible under any set of facts that could be established consistent with the allegations *Tolle v. Carroll Touch Inc.*, 977 F.2d 1129, 1134 (7th Cir 1992) see also *Morales- Vallellanes v. Potter* 339 F.3d 14 (1st Cir 2003); *Simonton v. Runyon* 232, F.3d 33, 36-37 (2d Cir 2000). Even if the claims are dismissed under Rule 12 (b)(6), the claim assertion is not sanctionable. In *Beeman v. Fiester*, 852 F.2d 206 (7th Cir. 1988), the court even though there was a finding that the the complaint was found to be not "well-grounded in fact", it declined to sanctions commenting, "[t]his alone ... cannot be the basis for sanctions; otherwise every complaint dismissed under Rule 12(b)(6) would be sanctionable." Id. at 211. This is precisely what the bankruptcy judge and district court concurred.

A fair reading of the decision of the bankruptcy judge decision and the district affirmance would leave us with the impression that at best, the evaluation of the bankruptcy judge and of the district court about the plausibility or viability of the complaint was that the issues were litigable. Even if the issues were litigable, agitating them does not mean transgressing sanctions line. It is not a violation of rules or abusive litigation to assert or pursue a litigable issue of fact. *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282 (4th Cir. 1987); *Republic Health Corp.*, 669 F. Supp. 1511, 1519 (D. Nev. 1987) (refusing to sanction losing party for filing a motion to dismiss on personal jurisdiction grounds.)

### e.    The Appellant properly pleaded liability under *Bivens.*

The defendant also urged the court to consider assessing liability against the penal trustee to overcome any defense of immunity and also the panel trustee is a government agent, thus all constitutional rights could be asserted. *Bell v. Thornburg*, No. 13-30155, 2013 WL 6850026 (5th Cir. Dec. 30, 2013)(treating Chapter 13 trustee as a government entity). Also the trustee sometime improperly though arrogate barton doctrine immunity to their conduct. , thus constitutional tort was asserted. The Joint Family is a religious unit and each member owing religious duties. It is clear that the trustee will have to protect the religious rights of the each family member under RFRA i.e. The *Religious Freedom Restoration Act* of 1993, Pub. L. No. 103-141, 107 Stat. 1488 (November 16, 1993), codified at 42 U.S.C. § 2000bb through 42 U.S.C. § 2000bb-4. The debtor and the family members wanted to the tell the trustee about the background of the family as to why her name was on the deed of the property, however the trustee ignored it and deliberately so as is evident from the 341 meeting, lack of informal oral

examination under Bankruptcy Rule 2004 examination etc. This Court is respectfully urged to look into the response filed against the Appellee motion for summary judgment in the underlying adversary proceeding where it is explained in detail as to how this panel trustee does not and did not have a case against the defendant. **A.96 Dock. # 145**. Trustee lawsuit violated the religious rights of the family members, by putting mother and son against each other and now they will have provide accounting of what they have done for each others in terms of monies, something considered blasphemous in their Islamic faith. It is a one religious family where the scriptural injunction is what belongs to the entire family belongs to the mother and vice versa.

The Complaint properly pleaded a violation of religious rights as the persistence of the trustee to ask the defendant to provide accounting at the peril of sanctions by the bankruptcy court. Trustee had been told that such accounting is considered ethical and allowable in their setup. Under our jurisprudence a violation of constitutional right is deemed damaging per se, however miniscule might be the damage. If a lawsuit emasculate the religious practices of the family, then lack of ability of practice itself is a damage. Lost liberty is compensable. The plaint clearly reflected the impact of the lawsuit on the family. See the Counterclaims Paragraph # 29—"The debtor living has been put to a jeopardy—the very son who is supporting his mother has been sued and this is a toritious interference with the family. The defendant-son is under religious duty to support his mother, the debtor here and now because of fear of this lawsuit, his spiritual duty to maintain his family has been negatively impacted. The issues could have been amplified in and through discovery or trial, however the bankruptcy judge decided

otherwise. Under the Federal Rules, a plaintiff generally need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2). Unless the complaint contains allegations involving fraud or mistake (see Fed. R. Civ. P. 9(b)), a plaintiff need not allege with specificity the facts on which the claim is based. This simplified notice pleading provides for the liberal opportunity for discovery, while relying on other pretrial procedures to define more narrowly factual issues and the merits of the claim. Conley v. Gibson, 355 U.S. 41, 48, 2 L. Ed. 2d 80, 85, 78 S. Ct. 99, 103 (1957). The counterclaimed alleged enough to satisfy the legal requirements of the pleadings under the federal rules. Constitutional right to practice ones own religion, right to be left alone, undue interference with family spiritual practices constitutes serious violation is indeed a damage to person and property and thus clearly, "an unlawful interference with one's person or property under color of process." With particularity were these elements pleaded. See Counterclaims. Damages were properly asked in the counterclaims. Punitive damages are the most effective means of punishing federal officials who have violated citizens' constitutional rights. See, e.g., *Paton v. La Prade*, 524 F.2d 862, 872 (3d Cir. 1975); *Hanna v. Drobnick*, 514 F.2d 393, 398 (6th Cir. 1975) and for analogy see  punitive damages awards in § 1983 actions. See,e.g., *Cochetti v. Desmond*, 572 F.2d 102, 105-06 (3d Cir. 1978); *Zarcone v. Perry,* 572 F.2d 52, 54- 55 (2d Cir. 1977); *Basista v. Weir*, 340 F.2d at 87- 88.    It is clear that when such rights as alleged in the counterclaims are violated, punitive damages should be recoverable whenever the defendant "acted with actual knowledge that he was violating a [constitutional] right" or with "reckless disregard of whether he was violating such a right. *Adickes v. Kress & Co.* 398 U.S. 144, 233. (1970).

Counterclaims explicitly pleaded how the trustee and her team recklessly disregarded the rights, religious practices of the family and right of the family to be left alone, knowing fully well that the debtor was a bare legal title holder and had not paid a single penny for the purchase or servicing the debt. Mr. Mahia properly demanded compensation, punitive damages for their constitutional violation and the pleadings comported with that requirement, as it delineated how the Appellee acted. Cochetti v. Desmond, 572 F.2d 102, 106 (3d Cir. 1978) ("acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so"); *Simpson v. Weeks*, 570 F.2d 240, 243 (8th Cir. 1978) ("willfully and in gross disregard for the [plaintiff's] rights"), cert. denied, 99 S. Ct. 3101 (1979); *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977) ("willfully and with gross disregard for the plaintiff's rights"); *Silver v. Cormier,* 529 F.2d 161, 163 (10th Cir. 1976) ("reckless indifference to the property rights of others, ill will, a desire to injure or malice*"); Caperci v. Huntoon*, 397 F.2d 799, 801 (1st Cir. 1968) (per curiam) ("outrageous invasion of plaintiff's privacy"), cert. denied, 393 U.S. 940 (1968)

Damages are presumed for some constitutional rights (loss of liberty) violations. *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004). As punitive damages are recoverable under section 1983 whenever the defendant "acted with actual knowledge that he was violating a [constitutional] right" or with "reckless disregard of whether he was violating such a right, then they are equally available with and under Bivens against the government or its agents employees.

We have witnessed abuse in the bankruptcy system by the panel trustee and we as lawyers have a duty towards courts, our system and the

clients to maintain integrity and honesty. As so aptly stated by Judge Weinstein,

> Some litigations should be, if not encouraged, at least not discouraged. Of particular importance are cases brought against government officials and government agencies. Such suits are often the only effective channel for keeping within bounds official arrogance and lawlessness. At the very least, they publicize grievances and thus permit the ventilation of private outrage that the First Amendment's right to petition protects .... Many civil rights cases fall into this category. So, too, do many prisoner habeas corpus cases ... .Sometimes there are reasons to sue even when one cannot win. Bad court decisions must be challenged if they are to be overruled, but the early challenges are certainly hopeless. The first attorney to challenge *Plessy v. Ferguson* was certainly bringing a frivolous action, but his efforts and the efforts of others eventually led to Brown v. Board of Education.

In *Eastway Constr. Corp. v. City of New York,* 637 F. Supp. 558, 575 (E.D.N.Y. 1986), modified, 821 F.2d 121 (2d Cir. 1987), Judge Weinstein analyzed at some length policy issues raised by the specter of Rule 11 sanctions.

## 9.    The Pleadings were not futile, they comported with law.

Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the claim showing that the pleader is entitled to relief."

The appellant provided all the grounds, paragraph 23 of the Complaint, could not have been more clearer. **A109.** Rule 9(b) governs the form and content of alleging malice in a federal action and a state rule requiring a certain degree of specificity need not be followed. *Stearn v. MacLean-Hunter Ltd.,* 46 F.R.D. 76, 79 (S.D.N.Y. 1969). Also see *Hefferman v. Bass,* C.A.7th, 2006, 467 F.3d 596 (district court should not have enforced degree of particularity required by Illinois law when Federal Rule did not require such specificity). § 1301Malice, Intent, or Condition of

Mind, 5A Fed. Prac. & Proc. Civ. § 1301 (3d ed.)

In this case, the bankruptcy court, went out of way to decide the merits of the underlying counterclaims without any benefit of discovery, deposition or hearing. *Oliveri v. Thompson*, 803 F.2d 1265, 1279 (2d Cir. 1986) ("A plaintiff does not have to be prepared to meet a summary judgment motion as soon as the complaint is filed in court"). The District Court looked at it provided its own version, however that is not the law of the land on this topic. Thus to have the Appellant sanctioned for adhering to a different reading of law is improper. *Black Hills Institute v. S.D. School of Mines,* 12 F.3d 737, 745 (8th Cir. 1993) (declining to impose sanctions because the "[c]ase law on this issue is sparse"); *Hauser v. Farrell,* 14 F.3d 1338, 1343 (9th Cir. 1994) (declining to impose sanctions because, although a motion was ultimately denied, "the question was close").

In the counterclaims, the plight of the numerous family who have been targeted by these trustees' has been mentioned. A good faith effort was made in asking the district court to amend the local rules of the bankruptcy courts to assure that the panel trustee do not abuse the system, deprive the debtors and their families an access to bankruptcy court. That cannot be sanctioned. Asking for a relief of this kind is not sanctionable. *Knipe v. Skinner,* 19 F.3d 72, 76 (2d Cir. 1994) ("counsel is candid about [the] legal theory's prior lack of success, honestly seeks to have existing law altered, and has not brought the action for an improper purpose ... ."). Relief asked was not frivolous, but a desideratum of the consumer debtors and consumer bankruptcy bar.

Pleading was sound. When one pleads constitutional rights violation one does not delineate jurisprudence of such rights in a complaint or answer, they are left for trial or summary judgment motion. For instance, "[b]ecause

racial discrimination in employment in employment is a 'claim upon which relief can be granted,' . . . 'I was turned down for a job because of my race' is all a complaint has to say." *Bennett v. Schmidt*, 153 F.3d at 518.    A review of the bankruptcy court now pending response to this panel trustee motion for summary judgment has detailed the religious rights of the family and how it is impaired by the trustee law, invoked therein also is   The *Religious Freedom Restoration Act* of 1993.

It was alleged that panel trustee acted with a mind-set to extort settlement, the pleading is governed by flexible Rule of 9 (b)—"malice, intent, knowledge and other conditions of mind  of a person may be averred generally." *O'Brien v. National Property Analysts Partners*, 936 F.2d 674 (2nd Cir. 1991). Details and the merits of the claims are not adjudged summarily, especially claims of violation of religious practices. It is a matter reserved for the trial. The complaint satisfied all the rules of pleadings-- possible, plausible and probable—as laid out in *Conley v. Gibson, Bell Atlantic v. Twombly and Iqbal v. Ashcroft.*   However once again, in-articulatibilty of claim does not form a basis for sanctions.


**10.    The district court should have granted a De novo hearing in this matter.**

The Appellant raised Appointment Clause objection to the bankruptcy judge presiding over the sanctions issues.  If the bankruptcy judge claims inherent powers and be able to use section 1927 powers on its own than it violates appointment clause. Not a single word in the decision about it. There is no doubt that the Appellant has a clear right to be heard in a properly constituted court of law. ***Glidden Co. v. Zdanok*** 370 U.S. 530 (1962). Also raise violation of separation of power claims, the interests of

either Congress or the executive as a shield against regulation or coercive action. ***INS v. Chadha***, 462 US 919 - 1983 (the Court invalidated the line-item veto at the behest of a noncitizen litigant in an immigration proceeding. 462 U.S. 919, 930–31, 959 (1983). In *Clinton v. City of New York*, 524 U.S. 417 (1998) the Court allowed recipients of federal spending to challenge President Clinton's use of a line-item veto as an infringement on Congress's lawmaking authority. 524 U.S. 417, 421 (1998). The accounting firm did not assert PCAOB had infringed on any constitutionally protected individual right or interest that the firm possessed, but rather that the Board's organic act "contravened the separation of powers by conferring wide-ranging executive power on Board members without subjecting them to Presidential control. Also linked to this challenge was that judicial business of adjudicating constitutional and state claims is being unconstitutionally delegated, under 28 U.S.C. 157 "Procedure" to non-article III courts. Appellant and or his client in federal courts are "always" allowed to "insist that [their] conduct be judged in accordance with a rule that is constitutionally valid. See Henry P. Monaghan, Third Party Standing, 84 Colum. L. Rev. 277, 283 (1984) [hereinafter Monaghan, Third Party Standing] ("Any litigant has the right to make a facial challenge to the constitutional sufficiency of the rule actually invoked against him [or her], without regard to whether his [or her] own conduct could validly have been regulated by a differently formulated rule." (footnote omitted)); see also Richard H. Fallon, Jr., As- Applied and Facial Challenges and Third-Party Standing, 113 Harv. L. Rev. 1321, 1331–32 (2000) (endorsing the "valid rule" formulation). In this coercive action of being sanctioned by a bias bankruptcy judge, the Appellant clearly had a right to challenge the Appointment of the Bankruptcy Judge and demand to be heard by a neutral

article III judge.    Thus there was enough at stake to question the "constitutional sufficiency of the rule actually invoked against him." Due process entails a process and an adjudicator qualified under the Constitutional scheme or constraints. See, e.g., *Morrison v. Olson*, 487 U.S. 654, 669–70 (1988); *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,* 130 S. Ct. 3138, 3147 (2010).  The apprehension that the district court would be inundated with cases, if the bankruptcy judicial business is allowed to revert back to district back on demand alone can't be reason enough to deny an article III hearing.  The " 'fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution.' " Id. citing *Bowsher* v. *Synar* , 478 U. S. 714.

Here, the District court was pleaded to grant a hearing, but no hearing came by.  The district court, instead of taking a reasoned approach or independent view, shoehorned the law and the facts into the sanction procrustean bracket.  Abuse of discretion standard used does not mean that the Court ignores what has been pleaded and good faith of the litigant.  Both decisions, district court and as well as the bankruptcy one has finding of subjective bad faith and it asserts that there could not have been any colorable basis.  It used Rule 12 (b)(6) analysis to impute bad faith—which is clearly contrary to the sanctions laws and established precedents of the Courts.  Even if it use Rule 12 (b)(6) analysis to gauge the value of the counter-claims, then it must follow it to the meritorious end. Then "the issue is not whether a plaintiff [Appellant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S., 506, 511 (2002). The bankruptcy/district courts should have accepted as true all factual allegation contained in the

counterclaims, *Leatherman v. Tarrant County Narcotics Intelligence &
Coordination* Unit, 507 U.S. 163, 164 (1993), and assume all reasonable
factual inferences that can be drawn from those facts in the claimant's favor.
See, e.g., *Garfield v. NDC Health Corp. , 466 F.3d 1255, 1261 (11th Cir.
2006); E. Food Servs. V. Pontifical Catholic  Univ. Serv. Ass'n*, 357 F. 3d 1,
3 (1st Cir. 2004).

## 11. The Legal fees awarded were very high and unbearable.

The Appellant borrowed monies at a high interest rate so that he could
be in compliance of a bankruptcy judge. A57.  Just because the Appellant
did not participate in the evidentiary, it did not mean that the bankruptcy
judge did not have a duty to meticulous examine the time. Time sheet has
several objectionable entries, for instance asking the Appellant legal fees for
preparation of the Adversary Complaint. A560.  If fees are to be awarded,
the district court must make some evaluation of the breakdown of fees
submitted by counsel. See, e.g., *Orange Prod. Credit Ass'n v. Frontline
Ventures, Ltd.,* 792 F.2d 797, 801 (9th Cir. 1986). Since reasonableness is
the key, the court should generally consider the foregoing factors,
particularly the complexity of the litigation, the reputation and experience of
counsel, his or her professional skill, the time involved, and the results
achieved. *Anschutz Petroleum Mktg. Corp. v. E.W. Saybolt & C*o., 112
F.R.D. 355, 359 (S.D.N.Y. 1986).

Both the sanction and penalty were undeserved.   The bankruptcy
judge applied Rule 11 reasoning, levied Section 1927 penalty and found bad
faith invoking "inherent powers", as none of the findings could have risen to
the level of forbidden pleadings under either Rule 11 or section 1927. "[I]t is

imperative that the court explain its sanctions order with care, specificity, and attention to the sources of its power. . . . [A sanction award imposed] either without reference to any statute, rule, decision, or other authority, or with reference only to a source that is inapplicable will rarely be upheld." (internal citations and quotation marks omitted). *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997). Judge is supreme with its broad discretion in deciding the severity of punishment. However precedent impose limits to the broad discretion. As stated that "[t]he concept of discretion implies that a decision is lawful at any point within the outer limits of the range of choices appropriate to the issue at hand; at the same time, a decision outside those limits exceeds or, as it is infelicitously said, 'abuses' allowable discretion." *Eastway Constr. Corp. v. City of New York*, 821 F.2d 121, 123 (2d Cir. 1987). The bankruptcy judge decided to impose a monetary sanction of $15,000 without questioning the unfair and unreasonable demands of the appellee demanding monies. The Bnakrpcy judge ignored that fact that where the Appellant was only given a sum of $250 dollars and that Appellant is a struggling lawyer who does lot of pro-bono case [as she admits], her punishment is not least severe sanction adequate to serve the purpose for which the sanction is being imposed. *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 46 (D.C. Cir. 1990).

The Bankruptcy Judge says that whatever amount the appellee demanded, i.e. $18,336 is "reasonable  and necessary in connection with responding to the Counterclaims and pursuing this Motion for Sanctions."

First, there was was no response to the Counterclaims. There was no motions etc. filed with the Bankriptcy Court regarding the Counterclaims. Secondly, entire monies as demanded in the motion for sanction was "not reasonable and necessary." "[R]easonable" expenses, including attorneys'

fees, do not necessarily equal actual expenses. See, e.g., I*NVST Fin. Group, Inc. v. Chem-Nuclear Sys.*, 815 F.2d 391, 404 (6th Cir. 1987); T*homas v. Capital Sec. Servs.*, 836 F.2d 866, 879 (5th Cir. 1988) (en banc); *In re TCI Ltd.*, 769 F.2d 441, 448–449 (7th Cir. 1985); *Miltier v. Downes*, 935 F.2d 660, 665 (4th Cir. 1991) ("a monetary sanction should never be based solely on the amount of attorney's fees claimed by the injured party .... '[R]easonable' attorney's fees in the context of Rule 11 does not necessary mean actual expenses and attorney's fees") (citations and internal quotations omitted).

The Bankruptcy Judge also talks about adding more penalty for purposes of deterrence. "In particular, the Court may enhance or reduce this lodestart amount to arrive at the sanctions award that is appropriate under the circumstances based on the objective of compensation and deterrence, with due regard ability to pay." It is ironical that the bankruptcy judge talks about, "ability to pay" fully realizing that the Appellant's financial constraints could have never enabled him to pay $15,000. There is absolute entitlement to even reasonable attorney's fees if the court determines that the rule's central goal of deterrence may be achieved by a lesser sanction. *Eastway Constr. Corp. v. City of New York*, 821 F.2d 121, 122–123 (2d Cir. 1987) ($50,000 incurred; $10,000 awarded); International Shipping Co., S.A. v. Hydra Offshore, Inc., 675 F. Supp. 146, 154–155 (S.D.N.Y. 1987) ($48,031.33 incurred; $10,000 awarded).

The Appellee knew that there is no possibility of any money from the underlying case, hence they did their best to get maximum out of the Appellant.

Time records shows that Appellee demanded monies for even the preparation of the Adversary Complaint. And ironically the bankruptcy

judge found that, [a] review of those time records confirms that they show actual and estimated charges for fees and costs that are reasonable  and necessary in connection with responding to the Counterclaimss and pursuing this Motion for sanctions"

## 12.    The District Court used an incorrect standard of review.

The issues presented in the counterclaims were not within the discretion of the bankruptcy judge. First the Answer clearly demanded to be heard by an article III court and secondly the Appellant demanded that the issues raised be decided by an article III court.   The bankruptcy judge takes it upon herself to decided dispositive issues and merits of the counterclaim, which was clearly out of her jurisdiction.  There were several constitutional issues raised. Hence to have a bankruptcy judge given a discretionary power over sanctions is not proper.  See, e.g., *Cooper Indus., Inc. v. Leatherman Tool Group, Inc*.., 532 U.S. 424, 433 (2001) (noting that only if no constitutional issues is raised, federal court determination that state jury award  is within the confines of  a state punitive damages statute is reviewed for abuse of discretion of only). The bankruptcy court used "inherent powers" and section 1927 sanctions which are discretionary. Even those discretionary decisions are not "unfettered by meaningful standards or shielded from thorough appellate " scrutiny. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975). "[D]iscretionary choices are not left to . . . inclination, but to . . . judgment; and . . . judgment is to be guided by sound legal principles. *Id.* In other words, "[w]hether discretion has been abused depends . . . on the bounds of that discretion and the principles that guide its exercise." *United States v. Taylor*, 487 U.S. 326, 336 (1988).

However the issues that the bankruptcy court decided, on the jurisprudence of State law abuse of process, constitutional torts and religious rights or private rights of the defendant family are not something that are left to its discretion. It was not something that which was or is within the range of choices permitted to the bankruptcy court.    The bankruptcy judge evaluated the merits of the counterclaims to hinge its sanctions that is why the subject matter of the court becomes important here. Abuse of discretion review means "that the court has a range of choice, and that its decision will not be disturbed *as long as it stays within that range* and is not influenced by any mistake of law." "Abuse of discretion review means "that the court has a range of choice, and that its decision will not be disturbed *as long as it stays within that range* and is not influenced by any mistake of law." *United States v. Dockery*, 955 F.2d 50, 54 (D.C. Cir. 1992) quoting *Kern v. TXO Production Corp.,* 738 F.2d 968, 970 (8th Cir.1984) (emphasis added); see also *Zervos v. Verizon, N.Y. Inc.* 252 F.3d 163, 168-169 (2nd Cir. 2001). Thus the distict court while reviewing even under the abuse of discretion standard, was not only to have determine whether the bankruptcy court's decision was outside the choices permitted to it, but also whether, in the light of the particular factual circumstances as here, the bankruptcy court erred in the weighing process by which it exercised its discretion. District court is silent about it, for it seems like it has treated bankruptcy court as an extended article III court, itself as appellate one though the district court is the court of original jurisdiction for filing and then its judicial work, entire bankruptcy matter is transferred [unconstitutionally though) to bankruptcy judge.    These are not harmless errors, jurisdictional errors can never be harmless. See, e.g., *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 n.3 (1988). Supreme Court has clearly instructed that the private rights issues

are not be dealt by the non-article III courts, unless excepted, and that constitutional and state law issues are not be adjudicated by the bankruptcy court. See, *Northern Pipeline, Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), *Stern v. Marshall*, 564 U.S. ___ (2011). *Crowell v. Benson* (warranting *de novo* hearing in case of findings by a commissioner etc.). If a decision cannot be made by the bankruptcy judges on such issues, a fortiori, they cannot rule on its merits to hold someone in sanctions. It is different issue if someone is disrespecting the court or is in contempt. Here it was , it is the merit alone that is what was on the anvil.

With these odds against the defendant and the Appellant, it also does not help to have a judge who is biased. **A785**. Perhaps, this all started, for the Appellant addressed the bankruptcy judge as an "inferior judicial officer", in a court paper, to make a legal argument about powers of the bankruptcy court under the constitutional scheme of government. However that was never intended to be disrespectful, it is the language used in several respectable legal writings. The undersigned has tremendous respect for our legal system and its institutions, and we fight to uphold the dignity of law and to ensure fairness, as an old maxim instruct..."save the law, for law is the saver."

## CONCLUSION

Wherefore it is respectfully submitted that the decision sanctioning the undersigned be set aside in its entirety or in the alternative at least a hearing be granted before an article III court.

Dated: July 28, 2014
New York New York

Karamvir Dahiya, Pro Se Appellant

46

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE, AND TYPE STYLE REQUIREMENTS

## CERTIFICATE OF COMPLIANCE

I, hereby certify that:

1.      This brief  complies  with the type-volume limitation of Fed. R.App. P. 32(a)(7)(B) because this brief contains 13,979  words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and

2.      This brief complies with the typeface requirements of Fed. R.App. P. 32(a)(5) and the type style requirements of Fed. R.App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word 2010 in 14-point Times New Roman Font.

Dated: New York New York
           July 28, 2014

Respectfully Submitted,

Dahiya Law Offices LLC

BY: _____
           Karamvir Dahiya, Appellant